IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDRANIK GRIGORYAN, *Petitioner,* v. JAMAL J. JAMISON, et. al., *Respondents.* | CIVIL ACTION NO. 25-1389 |

**Pappert, J.**                                                                                               **April 30, 2025**

## MEMORANDUM

On December 7, 2023, Andranik Grigoryan, a citizen of Uzbekistan previously granted asylum in the United States, was detained by Immigration and Customs Enforcement upon his release from federal prison. As a result of his crimes, he was deemed removable and held in mandatory detention under 8 U.S.C. § 1226(c) while his case progressed through immigration court. On March 14, 2025, Grigoryan filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241, contending he is entitled to an individualized bond hearing under the Fifth Amendment Due Process Clause. Both parties agree that Grigoryan's claim is governed by the four-factor test established by the Third Circuit Court of Appeals in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (2020). After reviewing the parties' submissions and holding oral argument, and consistent with the Circuit's guidance, the Court grants the petition and orders the required hearing.

1

I

A

Grigoryan was born in Tashkent, Uzbekistan—then the Uzbek Soviet Socialist Republic—in 1986. (Grigoryan Decl. ¶¶ 1, 3, ECF No. 1-3.) In 1999, Grigoryan, his mother and his sisters obtained tourist visas and travelled to the United States to attend his father's funeral. (*Id.* ¶¶ 8–9.) Once in the United States, Grigoryan and his family applied for asylum, claiming they faced a credible fear of persecution in Uzbekistan, a majority Muslim and Uzbek country, because they were Christian and Armenian. (*Id.* ¶¶ 4, 9.) United States Immigration and Naturalization Services officials granted Grigoryan's application for asylum on May 17, 2000. (Asylum Decision, ECF No. 1-4.) In the years that followed, he was convicted of several criminal offenses: forgery in 2005, possession of marijuana and possession of a weapon in 2007, driving under the influence in 2009 and petit larceny in 2010. (O'Neill Decl. ¶¶ 8–12, ECF No. 22-2.) Then, in 2021, he participated in a fraudulent gift-card scheme and subsequently pled guilty in the United States District Court for the Central District of California to possession of 15 or more unauthorized access devices in violation of 18 U.S.C. § 1029(a)(3). (Grigoryan Decl. ¶ 12); (O'Neill Decl. ¶ 5.) He was sentenced to sixteen-months incarceration in federal prison. (Grigoryan Decl. ¶ 12); (Judgment of Sentence, *United States v. Grigoryan*, No. 21-86, ECF No. 108.)

Due to Grigoryan's conviction, U.S. Citizenship and Immigration Services issued a notice of its intent to terminate his asylum status pursuant to 8 U.S.C. § 1226(a)(2)(iii), (Notice to Appear at 5, ECF No. 22-4), which states that any "alien who

is convicted of an aggravated felony at any time after admission is deportable."[1] Grigoryan was taken into ICE custody upon his release from federal prison on December 7, 2023. (Grigoryan Decl. ¶ 14.) He spent one day at the Elizabeth, New Jersey detention facility and, on December 8, 2023, was moved to the Moshannon Valley Processing Center pending the resolution of his removal proceedings. (Pet. ¶ 21); (O'Neill Decl ¶ 15.)

In immigration court, Grigoryan, represented by counsel, conceded that he was a removable alien, (Concession of Removability at 2, ECF No. 22-5), but sought withholding of removal under 8 U.S.C. § 1231(b)(3)(A) and the Convention Against Torture and deferral of removal under the CAT. (Initial IJ Decision at 4, ECF No. 1-5.) The Immigration Judge held an evidentiary hearing at which Grigoryan and one of his sisters testified to the dangers he purportedly faced if deported to Uzbekistan. *See* (BIA Decision at 2, ECF No. 22-8). On September 20, 2024, the IJ found Grigoryan's testimony credible and granted his application for deferral of removal under the CAT. (Initial IJ Decision at 4.) The Government timely appealed that decision to the Board of Immigration Appeals. (Notice of BIA Appeal at 2, ECF No. 1-6.) On February 18, 2025, Grigoryan was transferred to the Federal Detention Center in Philadelphia. (Grigoryan Decl. ¶ 20.)

B

On March 14, 2025, while the Government's appeal to the BIA was pending, Grigoryan filed his petition for a writ of *habeas corpus* under 28 U.S.C. § 2241. (ECF

---

[1] USCIS determined that Grigoryan's § 1029(a)(3) conviction constituted an aggravated felony because it involved "fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i); (Notice to Appear at 5.)

No. 1.) On the same day, he filed a motion for a temporary restraining order or, in the alternative, a preliminary injunction seeking his immediate release. (ECF Nos. 2 & 3.) On March 21, 2025, the Court held a telephone conference with counsel for the parties, (ECF No. 12), during which counsel and the Court agreed to deny without prejudice the motion for a TRO and expeditiously resolve the PI motion and *habeas* petition. The Court set expedited briefing deadlines and scheduled a hearing for April 17, 2025. (Sched. Order, ECF No. 13). On March 31, 2025, the BIA remanded the IJ's deferral decision, holding that the IJ's finding that Grigoryan's testimony was credible was clearly erroneous. (BIA Decision at 3–4.) As a result, on April 11, 2025, Grigoryan was transferred back to Moshannon where he would be able to participate virtually in the remanded proceedings before the IJ. (Grigoryan Supp. Decl. ¶ 14); (O'Neill Decl. ¶ 15.)

In order to give the parties more time to address the impact of the BIA's decision on the petition, the Court extended the briefing deadline and re-scheduled the hearing for April 25, 2025. (ECF No. 20.) On April 16, 2025, the IJ denied Grigoryan's applications for relief, including deferral under the CAT, and ordered him removed to Uzbekistan. (Second IJ Decision at 4, ECF No. 23-1.) Grigoryan appealed to the BIA on April 24, 2025, (H'rg Tr. at 17:2–8), the day before the Court held its hearing. At that hearing, Grigoryan's counsel agreed that, to the extent the Court has the authority to issue a preliminary injunction ordering Grigoryan's immediate release, it would be more efficient to instead swiftly address the merits of the *habeas* petition.[2] (H'rg Tr. at

---

[2]   The Court doubts that it has the authority to issue such a preliminary injunction given that the underlying *habeas* petition only seeks a bond hearing. *See Sufi El v. New Jersey*, No. 22-03817, 2023 WL 4268410, at *3 (D.N.J. June 28, 2023) ("Plaintiff's attempt to seek relief from incarceration by the filing of a motion for preliminary injunction must be denied because the exclusive federal remedy for an inmate challenging the fact or length/duration of his confinement is a petition for a writ of *habeas corpus*."); *Aguirre v. Barr*, No. 19-CV-7048, 2019 WL 3889800, at *4 (S.D.N.Y. Aug. 19,

4

7:9–20.) Thus, the Court limits its analysis to Grigoryan's *habeas* claim—that his detention has become so prolonged as to entitle him to a bond hearing under the Fifth Amendment Due Process Clause. *See* (Pet. ¶ 3, ECF No. 1).

II

Federal courts have jurisdiction to hear *habeas corpus* petitions from alien detainees who claim their civil detention violates the "Constitution or laws . . . of the United States." 28 U.S.C. § 2241; *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).[3] Although the Immigration and Nationality Act precludes judicial review of the executive branch's discretionary judgment that an alien is subject to mandatory detention under 8 U.S.C. § 1226(c), *see* 8 U.S.C. § 1226(e), federal district courts retain jurisdiction over *habeas* petitions that raise constitutional challenges to that detention. *Demore v. Hyung Joon Kim*, 538 U.S. 510, 517 (2003). And the Third Circuit Court of Appeals has held that the Fifth Amendment Due Process Clause entitles alien detainees to an individualized bond hearing when, "[a]t a certain point, [their] continued detention becomes unreasonable." *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, at 232 (3d Cir. 2011).

---

2019) ("Because the Petition seeks only a constitutionally-adequate bond hearing, . . . and because the Court has granted that relief, immediate release is not necessary to make the habeas writ effective.").

[3]    Generally, *habeas* petitions should be brought in the district where the prisoner is confined. *See United States v. Kennedy*, 851 F.2d 689, 690 (3d Cir. 1988). Grigoryan filed his petition when he was housed at the Philadelphia FDC. (Pet. ¶ 22.) However, on April 11, 2025, Grigoryan was transferred back to Moshannon. (Grigoryan Supp. Decl. ¶ 14); (O'Neill Decl. ¶ 15.)

His transfer does not divest the Court of jurisdiction. *Anariba v. Dir. Hudson Cty. Corr. Ctr.*, 17 F.4th 434, 448 (3d Cir. 2021); *Ivory v. Ebbert*, No. 15-CV-2133, 2016 WL 7042968, at *2 (M.D. Pa. Nov. 4, 2016) ("Because Petitioner was incarcerated at USP Lewisburg at the time he filed his petition, within the territorial limits of the [district], this Court has subject matter jurisdiction to consider the petition. . . . Petitioner's subsequent transfer . . . does not deprive this Court of jurisdiction.").

The Third Circuit has enumerated a "nonexhaustive list of four factors to consider in assessing whether an alien's detention has become unreasonable." *German Santos v. Wardn Pike Cty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020). The first and "most important factor is the duration of detention," followed by the likelihood of continued detention and the reasons for the delay, including "whether either party made careless or bad-faith 'errors in the proceedings that caused unnecessary delay.'" *Id.* (quoting *Diop*, 656 F.3d at 234). Finally, courts ask "whether the alien's conditions of confinement are 'meaningfully different' from criminal punishment." *Id.* (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)).

### III

#### A

Grigoryan is entitled to a bond hearing under *German Santos*. To start, the first and "most important" factor—the length of detention—weighs in his favor. He has been in ICE custody since December 7, 2023, nearly seventeen months. (Grigoryan Decl. ¶ 14.) Although there is no "bright-line threshold" for when detention becomes unreasonable, an alien's "detention 'becomes more and more suspect' after five months." *German Santos*, 965 F.3d at 211 (quoting *Diop*, 656 F.3d at 234). The Third Circuit has ordered bond hearings after a six-month-to-one-year detention period in *Chavez-Alvarez*, 783 F.3d at 477, after two-and-a-half years of detention in *German Santos*, 965 F.3d at 211, and after thirty-five months of detention in *Diop*, 656 F.3d at 226. And most district courts in this circuit have ordered bond hearings where the length of detention was comparable to Grigoryan's. *See, e.g.*, *Malede v. Lowe*, No. 22-CV-1031, 2022 WL 3084304, at *5–6 (M.D. Pa. Aug. 3, 2022) (18 months); *Akhmadjanov v. Oddo*, No. 25-35, 2025 WL 660663, at *4 (W.D. Pa. Feb. 28, 2025) (17 months); *Arroyo v. Doll*,

No. 19-CV-490, 2019 WL 6130483, at *1 (M.D. Pa. Nov. 19, 2019) (adopting R&R) (16 months); *Dominic A. v. Anderson*, No. 20-2420, 2020 WL 6636362, at *3 (D.N.J. Nov. 12, 2020) (20 months); *Abioye v. Oddo*, No. 23-cv-0251, 2024 WL 4304738, at *6 (W.D. Pa. Sept. 26, 2024) (16 months).[4]

B

The second factor—the likelihood of continued detention—also supports granting the petition. This case's procedural posture is similar to that in *German Santos*, where "shortly before . . . oral argument," the BIA remanded the case to the IJ, and "shortly after oral argument . . . , an immigration judge denied [German Santos's] application for cancellation of removal." 965 F.3d at 207-08, 212. German Santos then "reserved his right to appeal to the Board" but, by the time the Third Circuit released its opinion, had not yet done so. *Id.* at 212.

Here, the BIA remanded Grigoryan's case back to the IJ a few weeks before the Court was scheduled to hold its hearing on his *habeas* petition. (BIA Decision at 5.) On April 16, 2025, the IJ denied Grigoryan relief, (Second IJ Decision at 4), and Grigoryan filed his appeal to the BIA the day before the hearing, (H'rg Tr. at 17:2–8). Grigoryan

---

[4] In response to the numerous courts which found the first factor to favor petitioners detained between 15–20 months, the Government cites a few cases that held otherwise. *See, e.g.*, *Appiah v. Lowe*, No. 24-cv-2022, 2025 WL 510974, at *4 (M.D. Pa. Feb. 14, 2025); *Crooks v. Lowe*, No. 18-cv-47, 2018 WL 6649945, at *2 (M.D. Pa. Dec. 19, 2018).

These cases, outnumbered as they are, do not persuade. Some of them, like *Appiah* and *Crooks*, are too short on analysis to compel a similar result here. And many of them precede *German Santos*. Finally, most base their decisions almost entirely on a finding that their petitioners' immigration cases were proceeding "at a reasonable pace." *See, e.g.*, *Crooks*, 2018 WL 6649945, at *2. The district court in *German Santos* denied *habeas* relief to a petitioner held for fifteen months for this same reason. No. 18-1553, 2019 WL 1468313, at *4 (M.D. Pa. Apr. 3, 2019). Yet, the Third Circuit remanded that decision, and focused its analysis on the total length of detention and the likelihood of continued detention, not the pace at which the case proceeded. Grigoryan's immigration case may be proceeding at a reasonable pace, but that does not change the fact that he has been held for seventeen months with many more to go.

will "stay in prison as long as it takes the Board to issue its decision," *German Santos*, 965 F.3d at 212, which the parties agree will be at least another 3–6 months. *See* 8 C.F.R. § 1003.1(e)(8)(i); (Gov't Resp. at 21, ECF No. 22); (H'rg Tr. at 63:15–21). Then, if the BIA "dismisses his appeal, [Grigoryan] may petition" the Third Circuit for review. *German Santos*, 965 F.3d at 212 (citing 8 U.S.C. § 1252(a)(5)). That court takes, on average, 9.3 months to resolve appeals from filing to disposition.[5] Thus, "the likelihood that his detention will continue strongly supports a finding of unreasonableness." *Id.*

C

The third factor—the reasons for the delay—is, as the parties agree, neutral. (H'rg Tr. at 45:21–46:2); (*id.* at 20:12–25.) There was one delay during this proceeding: Grigoryan filed his BIA brief on December 3, 2024, (ECF No. 1-7), despite its being due on November 27, 2024, (Notice of Appeal at 2). Grigoryan's initial brief was rejected for "improper service of process." (O'Neill Decl. ¶ 35.) Nothing suggests Grigoryan caused this six-day delay in bad faith, and either way, it is merely a "drop in the bucket compared to his" seventeen-month detention. *German Santos*, 965 F.3d at 212.

D

The fourth and final factor—whether the conditions of Grigoryan's confinement are "meaningfully different" from criminal punishment—also favors Grigoryan, albeit slightly.[6] During his detention, Grigoryan has spent 52 days at the Philadelphia FDC

---

[5] *See* Admin. Off. U.S. Courts, U.S. Courts of Appeals—Civil and Criminal Cases Filed (Dec. 31, 2024), https://www.uscourts.gov/sites/default/files/2025-02/fcms_na_appprofile1231.2024.pdf.

[6] Grigoryan makes several claims regarding his medical conditions and care while in detention. But as counsel agreed, these concerns are most relevant to the preliminary injunction motion, (H'rg Tr. at 9:9-18), which the Court need not address. To the extent Grigoryan's health issues are relevant to the fourth *German Santos* factor, the record suggests that any lapses in Grigoryan's medical care while detained have been due to his own refusal of treatments. *See*

and 458 days at Moshannon, a former federal prison. Because he is currently detained at Moshannon, the Court places greater emphasis on his current conditions of confinement, which he will experience into the future. (H'rg Tr. at 53:1–4) (noting that "there are no current plans to transfer Mr. Grigoryan and that the expectation would be that he will be at Moshannon pending the resolution of further proceedings"). However, because the *German Santos* factors are both backward and forward-looking, Grigoryan's conditions of confinement while at the FDC are also relevant. The Court addresses each in turn.

1

The Philadelphia FDC, which is operated by the Bureau of Prisons and houses mostly pretrial detainees, recently agreed to provide 125 beds to hold immigration detainees. *See* (Pet. ¶ 39); (BOP Agreement at 3, ECF No. 1-10). These ICE detainees are housed in a separate unit from criminal detainees, (Kevin Cassano Decl. ¶ 7, ECF No. 22-10), and are assigned to two-bunk rooms with roommates, (*id.* ¶ 10.)[7] But both parties agree that, as with prisoners, ICE detainees have telephone access to place recorded calls to family or friends at a cost and unrecorded, free calls to their attorneys. (Cassano Decl. ¶ 9.) As in any prison, ICE detainees experience occasional lockdowns, (Grigoryan Decl. ¶ 25), and can be sent to solitary confinement, (Ross Fisher Decl. ¶¶ 9–10). Grigoryan himself was placed in solitary confinement between April 4 and

---

*generally* (Resp. to Pet., Ex. B, ECF No. 22-2) (outlining the many instances in which Grigoryan refused medical care).

[7]     The parties disagree about how long the ICE detainees are confined to their cells, *compare* (Grigoryan Decl. ¶ 25) (16 hours a day), *with* (Cassano Decl. ¶ 8) (8 hours a day), and the Court is unable to resolve that conflict. Under either account, this fact is not as serious as in *German Santos*, where the petitioner was confined to his cell for twenty-three hours per day. 965 F.3d at 213.

April 11, 2025 for getting into a fight. (*Id.*); *see generally Akhmadjanov*, 2025 WL 660663, at *5 (noting that because petitioner was "subjected to carceral conditions, such as solitary confinement," the fourth factor weighs in favor of petitioner).

The Government notes that ICE detainees have access to an outside area, basketball court, computer terminals, televisions and an exercise facility. (Cassano Decl. ¶ 8.) But these privileges are also afforded to the FDC's criminal detainees. (H'rg Tr. at 51:8–23.) The Government ultimately rests on the fact that Grigoryan was not literally placed "alongside convicted criminals." 965 F.3d at 213. But the proper inquiry is not whether ICE detainees have contact with convicts, but whether their conditions are "meaningfully different" from those faced by convicts. Taken as a whole, Grigoryan's conditions while housed at FDC were not meaningfully different from criminal punishment.

2

Turning now to Moshannon, several district court judges in this circuit have found that the conditions at Moshannon are "penal in character." *Rivas v. Oddo*, No. 22-223, 2023 WL 4361140, at *1 (W.D. Pa. June 27, 2023); *see also, e.g.*, *Morgan v. Oddo*, No. 24-221, 2025 WL 1134979, at *4–5 (W.D. Pa. Apr. 17, 2025); *Akhmadjanov*, 2025 WL 660663, at *5; *Michelin v. Oddo*, No. 23-cv-22, 2023 WL 5044929, at *7 (W.D. Pa. Aug. 8, 2023). However, Grigoryan concedes that the conditions of his confinement at Moshannon are "better than those at the Federal Detention Center." (Grigoryan Decl. ¶ 20.) Moshannon contains four housing units, each containing six "pods" that each hold between 72–78 detainees. (O'Neill Decl. ¶ 18.) Each unit contains common bathrooms and living areas containing tables, televisions, telephones and tablets. (*Id.*)

Detainees are afforded four hours of outdoor recreation a day, (*id.* ¶ 20), and are otherwise confined to their pods, (Grigoryan Decl. ¶ 20).

Grigoryan contends that his conditions at Moshannon are "abysmal," and cites a report from the DHS Office of Civil Rights and Civil Liberties finding that conditions at Moshannon were inadequate in several respects. (Pet. ¶ 41.) That report's findings are not as "abysmal" as Grigoryan suggests, but they nonetheless add to the judicial findings above. All told, Grigoryan's conditions of confinement are sufficiently punitive to weigh slightly in favor of granting his petition, though even if the fourth factor slightly favored the Government, the first two factors weigh heavily enough to require a bond hearing. *See, e.g.*, *Nyamekye v. Oddo*, No. 22-240J, 2023 WL 9271844, at *5 (W.D. Pa. Mar. 28, 2023).

\*   \*   \*

Grigoryan has been detained for seventeen months, "an unreasonably long time, and there is no end in sight." *German Santos*, 965 F.3d at 213. Therefore, the Due Process Clause entitles him to an individualized bond hearing before an immigration judge at which the Government must prove by clear and convincing evidence that, if released, he would pose a danger to the community or a flight risk. *Id.* at 214.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.